UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PEGGY M. MAPLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:13-cv-1697-WTL-DML |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Peggy Maple requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Ms. Maple's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Ms. Maple filed for DIB on March 23, 2004, alleging she became disabled on September 20, 2003, due to ankle pain and depression. Ms. Maple's application was denied initially on March 23, 2004, and again upon reconsideration on June 21, 2005. Following the denial upon reconsideration, Ms. Maple requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing was held before of ALJ Roseanne Gudzan on October 23, 2007. The ALJ issued her decision denying Ms. Maple's claim on January 23, 2008, and the Appeals Council denied her request for review on February 26, 2008.

Ms. Maple then filed a complaint with this Court, *see* Cause No. 1:08-cv-469-SEB-DML (S.D. Ind. filed April 10, 2008). On July 24, 2009, this Court reversed the ALJ's denial decision and remanded the case for further proceedings. The Court found that the ALJ did not sufficiently articulate why Ms. Maple's "reports of ankle deformity and impaired ambulation did not satisfy the requirements of Listing 1.02A." R. at 573. The Court also noted that the ALJ did not cite to a medical expert's opinion in support of her conclusion.

In the interim, Ms. Maple filed a second application for DIB on February 11, 2008. The Appeals Council ordered a new ALJ to associate her two applications and to issue one decision on both claims. *See* R. at 434. A hearing was held on August 6, 2010, in front of ALJ James Norris during which three medical experts testified. The ALJ issued his decision denying Ms. Maple's claim on October 27, 2010; the Appeals Council also denied Ms. Maple's request for review on September 24, 2013. After the Appeals Council denied review of the ALJ's decision, Ms. Maple filed this timely appeal.

## II.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is

not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in her decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. THE ALJ'S DECISION

The ALJ determined at step one that Ms. Maple had not engaged in substantial gainful activity since September 20, 2003, the alleged onset date. At steps two and three, the ALJ concluded that Ms. Maple had the severe impairments of "post-traumatic arthritis of the right ankle; right patellofemoral syndrome; right shoulder impingement syndrome; mild right lateral epicondylitis; right carpal tunnel syndrome; obesity; a major depressive disorder; and a panic disorder with agoraphobia," R. at 401, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Ms. Maple had the residual functional capacity ("RFC") to perform sedentary work except that "she should not have [] more than occasional contact with supervisors, the general public, and co-workers and she [is] limited to simple and routine work that [does] not involve complex or detailed tasks. She [should] not climb ladders, ropes, or scaffolds." *Id.* at 412. Given that RFC, the ALJ determined that she could not perform any of her past relevant work. Finally, at step five the ALJ determined that Ms. Maple could perform a range of work that exists in the national economy, including work as a ticket checker, hand packager, and general office clerk. Accordingly, the ALJ concluded that Ms. Maple was not disabled as defined by the Act.

### IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Ms. Maple's brief (Dkt. No. 19) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### V. DISCUSSION

In her brief in support of her Complaint, Ms. Maple argues that the ALJ: 1) erred at Step Three in determining that she was not disabled due to her chronic right foot and ankle pain; 2)

erred in his credibility assessment; and 3) erred at Step Five in determining that she was capable of performing some sedentary jobs. Her arguments are addressed, in turn, below.

### A. The ALJ's Step Three Determination

With regard to the ALJ's Step Three determination, the only developed argument[1] Ms. Maple makes is that the ALJ erroneously rejected Dr. Bernard Sevens' opinions that Ms. Maple's impairments medically equaled Listing 11.14[2] and Listing 1.02A.[3]

At the August 6, 2010, hearing, Dr. Stevens, Board-certified in endocrinology and internal medicine, was asked "from an internal medicine perspective—are there impairments that this lady has?" R. at 590. Dr. Stevens responded no, but noted that "she has orthopedic impairments . . . But, you know, you have an orthopedic surgeon there." *Id*. Dr. Stevens was referring to Dr. Richard Hutson, Board-certified in orthopedic surgery, who was present at the hearing to give an opinion as to whether Ms. Maple's orthopedic impairments met or medically equaled a Listing. Despite this, Ms. Maple's counsel proceeded to ask Dr. Stevens his opinion as

---

[1] Ms. Maple also asserts a host of other reasons the ALJ's Step Three decision must be reversed—the ALJ refused to consider evidence, the ALJ failed to build an accurate bridge from the evidence to his conclusion, the ALJ failed to consider evidence contrary to the denial decision, etc. *See* Br. at 14-15. These arguments are undeveloped and amount to nothing more than rote assertions supported by a string of case citations. The Court will not address such skeletal arguments. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

[2] Listing 11.14 is that for peripheral neuropathy and requires "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station[.]"

[3] Listing 1.02 is that for major dysfunction of a joint and is "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Subpart A further requires the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively[.]"

5

to Ms. Maple's orthopedic problems. Dr. Stevens testified that Ms. Maple had "osteoarthritis of her right ankle, chronic tarsal tunnel syndrome, patellofemoral arthritis in her right knee, [] morbid obesity, and carpal tunnel syndrome in her right hand and wrist." *Id*. at 592. He then opined that she "equal[ed] Listing 11.14 for peripheral neuropathy and equal[ed] Listing 1.02A because of the arthritis in her knee and her ankle." *Id*. at 592. When Dr. Hutson testified, he disagreed, opining that Ms. Maple's orthopedic impairments did not met or medically equal Listing 1.02; however, he did not offer an opinion regarding Listing 11.14. *See id*. at 593-96.

As noted above, Ms. Maple argues that the ALJ "arbitrarily rejected" Dr. Stevens' medical opinions. Reply at 6. Social Security Ruling ("SSR") 96-6p offers helpful guidance in evaluating the ALJ's treatment of medical expert opinions:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.
>
> . . .
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.
>
> . . .

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.

It is clear, therefore, that the question to be determined by this Court is whether the ALJ considered Dr. Stevens' opinions and offered sufficient reasoning for assigning the opinions certain weight.

> With regard to Listing 1.02A, the ALJ noted the following:
>
> Dr. Hutson's testimony is given much greater weight than the opinion of Dr. Stevens because Dr. Hutson is an orthopedic specialist and orthopedic impairments are under discussion. Dr. Stevens is an internal medicine specialist without the particular knowledge and experience of Dr. Hutson. Furthermore, Dr. Stevens did not support his opinion with any rationale, whereas Dr. Hutson explained in detail why the criteria of Listing 1.02 were not satisfied.

R. at 407. The Court concurs with the ALJ's reasoning and finds it to be well-taken; in fact, Ms. Maple does not offer any contrary argument with regard to Listing 1.02A. *See* Reply at 3 (Ms. Maple only argued that she medically equaled Listing 11.14).

> With regard to Listing 11.14, the ALJ noted the following:
>
> Dr. Hutson did not give an opinion regarding whether the claimant's impairments, individually or in combination, met or equaled the requirements of Listing 11.14. The claimant was not diagnosed with peripheral neuropathy. Therefore, her impairments could not meet the requirement of Listing 11.14. Her gait and station were stable in October of 2004, shortly after her alleged onset date and shortly before her third right ankle surgery. Her gait improved significantly after a steroid injection in November of 2003 and for about three months after her December of 2003 surgery. Although the record reflects a sustained disturbance of her gait in May of 2004 through at least April of 2008 and, according to her doctor's opinion through the current date, the claimant's station has not consistently been documented to be impaired. Therefore, she cannot be found to have equaled the requirements of Listing 11.14, as analyzed through the cross-reference Listing 11.04B, because of an impaired gait and station. According to the claimant's treating physician, Dr. Herbst, and the consultative examiners, the claimant's gross (grasping) and dexterous (fine finger manipulation) movements remained normal throughout the relevant period. Therefore, she is found not to have equaled the

7

>requirements of Listing 11.14, as analyzed under cross-reference Listing 11.04B, because of impaired gross and dexterous movements.

R. at 409 (internal citations omitted). Ultimately, the Court agrees with Ms. Maple that the ALJ offered insufficient reasons for rejecting Dr. Stevens' opinion.

The Court is especially troubled by the ALJ's conclusion that because Ms. Maple's station has not consistently been documented to be impaired that she did not *equal* Listing 11.14; this is especially true when the ALJ notes that her impaired gait is well-documented. *See, e.g.*, R. at 487 (noting that Ms. Maple has "[a]ntalgic gait, slow speed, fair stability and poor sustainability. Unable to perform ambulatory maneuvers"); R. at 316 (noting that Ms. Maple's impairments "prevents normal [] activities, esp[ecially] standing [and] walking"). The fact that Ms. Maple's gait may not be impaired or severely impaired does not mean she cannot medically *equal* Listing 11.14. *See* 20 C.F.R. § 416.926(b)(1)(ii) ("We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria."). A medical expert testified that Ms. Maple medically equaled Listing 11.14; not only did the ALJ not inquire further of this opinion, he then rejected it without sound reasoning. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (noting that in determining whether the claimant's impairments medically equal a Listing, "[a]n ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"). This case, therefore, must be remanded. On remand, a medical expert should be consulted regarding whether Ms. Maple's impairments medically equal Listing 11.14, and sufficient inquiry should be made into this medical expert's opinion, including inquiring as to the specific evidence that supports that opinion.

## B. Credibility Determination

Ms. Maple next argues that the ALJ's credibility determination is "patently erroneous because it is contrary to Social Security Ruling 96-7p." Br. at 16. The Court disagrees. The ALJ's assessment addressed all of the following: Ms. Maple's daily activities; the location, duration, frequency, and intensity of Ms. Maple's pain or other symptoms; factors that precipitated and aggravated her symptoms; the type, dosage, effectiveness, and side effects of any medication she took; any treatment other than medication that she received; the opinion evidence of State Agency doctors and Ms. Maple's treating physicians; and Ms. Maple's own statements. *See* R. at 412-19. The ALJ's credibility assessment fully complies with SSR 96-7p; it spans eight pages and contains a thorough, detailed analysis of all relevant factors and opinions.

Ms. Maple also takes issue with the ALJ's use of the standard "boilerplate" language in assessing her credibility. Indeed, the Seventh Circuit has "repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014) (citing *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)). However, "the use of such boilerplate language will not automatically discredit the ALJ's ultimate conclusion if the ALJ otherwise identifies information that justifies the credibility determination." *Id.* The ALJ's decision clearly identified other information, noted above, that renders it much more than "perfunctory," Br. at 18. In all, the Court is satisfied with the ALJ's credibility determination.

## C. The ALJ's Step Five Determination

Finally, Ms. Maple argues that the ALJ's RFC assessment fails to account for her mental impairments, specifically, her moderate impairments in social functioning and in concentration, persistence, and pace.[4] She argues that the ALJ impermissibly failed to account for these deficiencies in limiting her to "simple and routine work." *See* R. at 412 (Ms. Maple's RFC assessment provided that "she should not have had more than occasional contact with supervisors, the general public, and co-workers and she was limited to simple and routine work that did not involve complex or detailed tasks"). The Court disagrees and finds that the RFC assessment and the hypothetical given to the Vocational Expert ("VE") fully account for Ms. Maple's mental limitations.[5]

On July 1, 2009, Ms. Maple underwent a mental RFC assessment performed by Dr. J. Gange. With regard to her sustained concentration and persistence, she was noted to be

---

[4] Ms. Maple notes that the ALJ found that she had moderate limitations in social functioning and concentration, persistence, and pace, citing to pages 410 and 411 of the Record. These pages contain the ALJ's Step Three determination. It is true that the ALJ found that Ms. Maple had moderate difficulties with social functioning and concentration, persistence, and pace in evaluating whether she met the requirements of paragraph B at Step Three; this, however, is not an RFC assessment. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the ALJ noted this in his decision. *See* R. at 412.

[5] Ms. Maple also argues that the ALJ failed to account for her "combined mental impairments with GAF assessment in the totally disabled range, as specified above." Br. at 20. The Court presumes Ms. Maple is referring to her GAF score of 50 that she received at a psychological evaluation on September 27, 2005. *See id*. at 10. At the August 6, 2010, hearing many of Ms. Maple's GAF scores were mentioned, ranging from a low of 50 to a high of 60. *See* R. at 599-601. However, both the psychologist and the ALJ correctly noted that GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)).

"Moderately Limited" in her "ability to work in coordination with or proximity to others without being distracted by them." R. at 508. With regard to her social interaction, she was noted to be "Moderately Limited" in her "ability to interact appropriately with the general public" and her "ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes." *Id*. at 509. Based on these notations, Dr. Gange opined that Ms. Maple "will have difficulty in stressful or highly social situations, but she maintains the ability to perform simple tasks [on a] sustained basis without special consideration." *Id*. at 510.

At the August 6, 2010, hearing, the ALJ directed Dr. Jack Thomas, Board-certified in clinical psychology, to this mental RFC assessment. Dr. Thomas agreed that Ms. Maple has moderate difficulties in these areas and opined that she should only have occasional contact with coworkers and supervisors. *See id*. at 602. Thus, the ALJ's hypothetical given to the VE at that hearing included the following limitation: "from a mental perspective, there should only be occasional contact with supervisors, the general public, and co-workers." *Id*. at 609. The VE then identified jobs Ms. Maple could perform.

Thus, the hypothetical given to the VE and the RFC assessment accurately encompassed Ms. Maple's limitations in social functioning and concentration, persistence, and pace. It is not analogous to the "unskilled work" limitation that the Seventh Circuit has cautioned does not fully address certain mental limitations. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (noting that limiting the plaintiff to "unskilled work" did not fully address her difficulties in "maintain[ing] regular work attendance, [carrying] out instructions, and [dealing] with the stresses of full-time employment"). Here, the ALJ went beyond limiting Ms. Maple to "simple and routine work" and imposed other restrictions, fully compatible with her mental RFC assessment and the medical expert's opinion. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th

11

Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). In all, the Court finds no reversible error with the ALJ's RFC assessment or the hypothetical given to the VE.

## VI. CONCLUSION

As set forth above, the ALJ erred in his treatment of Dr. Stevens' opinion that Ms. Maple's impairments medically equaled Listing 11.14. The decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 2/11/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification